UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ALBERTO DE LUNA,                                :

                       Petitioner,          :

      -against-                              :

SUPERINTENDENT M. CAPRA,          :
Sing Sing Correctional Facility,
                                         :

                     Respondent.
--------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: <u>11/06/2015</u>

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
<u>KATHERINE POLK FAILLA</u>**

14cv2975-KPF-FM

**FRANK MAAS,** United States Magistrate Judge.

       <u>Pro se</u> petitioner Alberto de Luna ("de Luna") brings this habeas proceeding

pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction, in Supreme

Court, New York County, following his plea of guilty to a charge of Attempted Murder in

the Second Degree.  De Luna entered that plea during his trial after the first prosecution

witness, victim Serafina Paulino ("Paulino"), described de Luna's savage attack on her

and identified him in open court.  De Luna currently is incarcerated at the Sing Sing

Correctional Facility, serving a determinate sentence of fifteen years, plus five years of

post-release supervision.

       In his habeas petition,[1] de Luna asserts that his conviction should be set

aside on two grounds:  <u>first</u>, he was suffering from a mental disease or defect, rendering

---

       [1]       De Luna has attached to his form petition, several supplementary pages, as well
as seven exhibits.  These documents, paginated consecutively in ECF, are hereinafter referred to
collectively as de Luna's "Petition" or "Pet."  (ECF No. 1).  Citations refer to the paragraphs or
ECF pagination of the Petition, as appropriate.

him legally incompetent to enter a guilty plea, and the trial court violated his due process rights by failing to order a mental examination or competency hearing; <u>second</u>, his trial counsel was ineffective.  (<u>See</u> Pet. ¶ 12; ECF No. 13 (Pet'r's Reply ("Reply") at 3).[2]

   For the reasons set forth below, I recommend that de Luna's Petition be denied.  Additionally, because de Luna has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

I. <u>Factual and Procedural Background</u>

   The factual and procedural summary that follows is based upon the transcript of de Luna's aborted trial, his guilty plea allocution, the minutes of his sentencing, and the briefing and decisions relating to subsequent state court proceedings. All of these documents are contained in the "State Court Record" supplied by the Respondent.  (<u>See</u> ECF Nos. 9-1, 9-2, 9-3 ("R.")).

  A. <u>Relevant Facts</u>

   Paulino is a native of the Dominican Republic.  (R. 88).  In December 2006, she rented a room in her apartment to de Luna, who is also from the Dominican Republic. (Id. at 96-98).  In or around July 2007, their relationship turned romantic, and de Luna and Paulino moved together into a different one-bedroom apartment.  (Id. at 102-04).

---

[2] De Luna's Reply consists of several separately paginated documents, filed as one document in ECF.  Citations refer to the ECF pagination.

At the beginning of their intimate relationship, "everything was fine." (Id. at 105). Eventually, however, Paulino stopped communicating with her friends and family because de Luna "didn't want [her] to talk to anybody," fearing "that [she] would talk to men." (Id. at 106-07). Less than one year after they had moved to the new apartment, de Luna threatened to kill Paulino and physically abused her. (Id. at 110). Later that month, de Luna moved out of their apartment. (Id. at 110-11).

On the evening of June 30, 2008, de Luna called Paulino, advising her to "[t]ake it easy, [and] go ahead with your life, because I'm in New Jersey." (Id. at 111). Despite that statement, when Paulino left her apartment the following day, de Luna was lurking in the hallway. He proceeded to stab her repeatedly with a knife.[3] (Id. at 111-12).

After the incident, de Luna fled, but subsequently was returned to New York following his arrest in North Carolina on July 21, 2008. (Id. at 67-68, 335). In the interim, a New York County grand jury had indicted him on one count each of Attempted Murder in the Second Degree and Assault in the First Degree and two counts of Burglary in the First Degree. (Id. at 3, 67-68, 335).

B.    Trial and Change of Plea

After de Luna rejected a pretrial plea offer of nine years in jail, the case was assigned to Justice Robert M. Stolz ("Justice Stolz"). (Id. at 1-4). By then, the People were unwilling to accept a plea involving a sentence of less than fifteen years, and Justice

---

[3]    Paulino suffered wounds to her face, back, and torso, including one stab wound that punctured the sac holding her organs together, bruised her kidney, and necessitated surgery. (See id. at 6, 150).

3

Stolz agreed that a sentence "a lot closer to fifteen than . . . the nine . . . previously rejected" was warranted. (Id. at 6). Because de Luna would not agree to such a disposition, the case proceeded to trial on February 5, 2010. (Id. at 8, 83).

Paulino was the first trial witness. (Id. at 86-112). After she described the circumstances leading up to the attack, and identified de Luna with considerable emotion as her assailant, (id. at 112 ("Yes, you attacked me. You wanted to kill me.")), Justice Stolz declared a recess, (id. at 112-13). Following a bench conference while the jury was still outside the courtroom, de Luna's trial counsel, Reginald Sharpe, Esq. ("Mr. Sharpe"), stated that de Luna wished to plead guilty to a charge of Attempted Murder in the Second Degree, on the understanding that the prosecutor would recommend a sentence of fifteen years, plus five years of post-release supervision, which was the lowest sentence the court would accept. (Id. at 113-14). The following colloquy then ensued:

| | |
|---|---|
| THE COURT: | Okay, Mr. De Luna, your lawyer tells me you decided to withdraw your plea of not guilty and plead guilty to attempted murder in the second degree, with the understanding that you will be sentenced to 15 years in State prison, to be followed by five years post release supervision. |
| | Is that what you have decided to do; yes or no? |
| [DE LUNA]: | Yes. |
| THE COURT: | Have you discussed this with your lawyer? |
| . . . | |
| [DE LUNA]: | Yes. |
| THE COURT: | Has anyone threatened you into pleading guilty? |

4

[DE LUNA]          No.

. . .

THE COURT:        By pleading guilty, you are giving up your right to a trial.

                  If there were a trial, you would not have to testify or call any
                  witnesses.  Your lawyer could cross-examine the People's
                  witnesses and the People would have to prove you guilty
                  beyond a a reasonable doubt.

                  But because you are pleading guilty there is not going to be a
                  trial.

                  Do you understand that?

[DE LUNA]:        Yes, sir.

THE COURT:        In addition, as part of this plea, you are giving up any right to
                  appeal in this case.

                  There will be no appeal in this case, so long as I sentence you
                  to the sentence I promised.

                  Do you understand that?

[DE LUNA]:        Yes, sir.

. . .

THE COURT:        Are you a citizen of the United States, sir?

[DE LUNA]:        No, sir.

THE COURT:        Okay, you may very well be deported as a result of this plea.

                  Do you understand that?

[DE LUNA]:        Yes, I agree.

THE COURT:        And in addition, as part of this plea, I'm going to . . . enter a

5

> final order of protection in this case, which will require you to have absolutely no contact of any kind directly or indirectly with Serafina Paulino.
>
> Do you understand that?

[DE LUNA]:        Yes, sir.

(Id. at 114-16).

Once he had established that de Luna understood the consequences of pleading guilty, Justice Stolz inquired about the relevant facts. Although de Luna at first hesitated to acknowledge his responsibility, he soon agreed – after conferring with Mr. Sharpe – that he was guilty of the crime:

> THE COURT:        Okay, by pleading guilty, you are admitting that on or about July 1, . . . 2008, with the intent to cause the death of Serafina Paulino, you attempted to cause her death, by stabbing her; is that true? Did you do that, sir?
>
> [DE LUNA]:        I don't remember –
>
> (Defense counsel conferring with [de Luna].)
>
> [DE LUNA]:        Yes.
>
> MR. SHARPE:        He said yes.
>
> THE COURT:        Discuss this with your lawyer and tell me whether you did that?
>
> [DE LUNA]:        Yes.

(Id. at 116-17). Based on these responses, Justice Stolz accepted de Luna's guilty plea.

(Id. at 117).

C.      Sentencing

Justice Stolz sentenced de Luna on February 23, 2010.  (Id. at 122).  At the outset of the proceeding, Justice Stolz noted that de Luna's pre-sentence report indicated that he wished to withdraw his guilty plea and obtain new counsel.  (Id. at 124).  Justice Stolz noted further that de Luna had claimed during his pre-sentence interview that:  (1) "he was not of full mental capacity at the time that the plea agreement was made;" (2) he "did not understand what he was doing;" (3) "there was a problem with the interpreter;" (4) he did not get a "proper defense;" (5) he had a "history of mental illness;" (6) he was "confused during the court proceedings because there were so many adjournments;" and (7) Paulino's "account of the offense was a lie" because he had "moved out of her home about a year ago and ha[d] documentation to prove this."  (Id.).

During the ensuing colloquy, Justice Stolz asked Mr. Sharpe whether he was "aware of any legal reason" why de Luna should be allowed to withdraw his guilty plea.  Mr. Sharpe responded that he was unaware of any such reason, but indicated that de Luna had provided him with an aftercare letter which reflected de Luna's "history of alcoholism" and the fact that he had been "prescribed certain medications."  (Id.).  Mr. Sharpe also furnished that letter to the Justice, who, in turn, showed it to the prosecutor. (Id. at 124-25).

Despite this submission, Justice Stolz concluded that de Luna's plea allocution had been "detailed and sufficient," and that there was an independent factual basis for the plea based on Paulino's trial testimony.  (Id. at 125).  The Justice further

found that de Luna had "understood his rights" and had "knowingly waived them and entered a [guilty] plea in consideration of [the] negotiated sentence." (<u>Id.</u>).  Through questioning, Justice Stolz also established that neither Mr. Sharpe nor the prosecutor knew of any reason to believe that de Luna "was not competent to be sentenced," with the prosecutor adding that the People had never "had an indication that he ought to have been [sent for a competency examination] throughout the two-year pendency of this case." (<u>Id.</u> at 125-26).  The Justice then adjourned the sentencing briefly for unrelated reasons. (<u>Id.</u> at 126-27).

When the sentencing resumed later the same day, de Luna renewed his request for new counsel, stating that he believed Mr. Sharpe was "working for the DA." (Id. at 128).  De Luna also complained that Justice Stolz had "forced" him to keep Mr. Sharpe as his counsel. (Id.).  Mr. Sharpe expressed a somewhat different view, however, stating that he had "felt fairly comfortable communicating" with de Luna, had "spoke[n] to him as recently as . . . yesterday," and had no doubt that de Luna's plea was knowing and voluntary. (Id. at 129-30).  Mr. Sharpe also noted that the case had been pending for approximately "a year and a half," during which time de Luna had two or three different lawyers. (Id. at 130).  Finally, Mr. Sharpe confirmed that he was not asking to be relieved of his assignment to represent de Luna. (Id. at 130-31).

When de Luna was given an opportunity to address the court, he protested that he would not "accept any sentence" and attempted to impeach Paulino's credibility. (Id. at 135-37).  (Earlier, in an angry outburst, de Luna also had questioned the

8

prosecutor's representation that his attack had led to injuries so severe that the surgeon had found it necessary that Paulino be "gutted from breast bone to pubic bone." (Id. at 132)).   Summarily rejecting de Luna's efforts to derail his guilty plea, Justice Stolz sentenced de Luna to the previously-agreed fifteen-year prison term, to be followed by five years of post-release supervision.  (Id. at 137).

D.   Direct Appeal

In his appeal to the Appellate Division, First Department, de Luna contended that:  (1) his appeal waiver was invalid because Justice Stolz had conflated the right to appeal with the trial rights de Luna was relinquishing, erroneously implying that de Luna could appeal only if he was not sentenced to the promised term; and (2) his sentence was excessive and should be reduced in the interest of justice.  (Id. at 139-75). On July 7, 2011, the Appellate Division affirmed de Luna's judgment of conviction summarily without explaining its rationale.  People v. De Luna, 926 N.Y.S.2d 838 (1st Dep't 2011).

On July 26, 2011, de Luna sought leave to appeal to the New York Court of Appeals.  (R. 205-06).  On November 28, 2011, Associate Judge Theodore T. Jones granted that application.  People v. De Luna, 17 N.Y.3d 952 (2011).  Thereafter, on May 8, 2012, the Court of Appeals reversed the order of the Appellate Division because that court had failed to indicate whether its affirmance of de Luna's conviction was based upon his appeal waiver or a determination that his excessive sentence claim lacked merit. People v. Gilliam, 19 N.Y.3d 842 (2012).

9

De Luna's appeal was one of four cases reversed that day on the same ground. His victory, however, soon proved pyrrhic. On June 14, 2012, the Appellate Division affirmed de Luna's judgment of conviction anew, stating expressly (and quite succinctly) that his "sentence was not excessive." People v. De Luna, 946 N.Y.S.2d 857, 858 (1st Dep't 2012). Thereafter, on June 29, 2012, de Luna once again sought leave to appeal. (R. 238-41). This time, on October 3, 2012, Judge Jones denied de Luna's letter application. People v. De Luna, 19 N.Y.3d 1102 (2012).

E.      Motion to Vacate the Judgment

On August 4, 2012, proceeding pro se, de Luna moved for an order vacating the judgment of conviction against him, pursuant to Section 440.10 ("Section 440.10") of the New York Criminal Procedure Law ("CPL"), on the same grounds that he now asserts in this proceeding. (R. 243-91). Without addressing the People's contention that de Luna had waived these claims by failing to raise them as part of his direct appeal, (see id. at 296-99), Justice Stolz instead rejected them on the merits in a decision dated March 13, 2013, (id. at 334-39).

Turning first to de Luna's competency claim, Justice Stolz noted that a defendant is presumed competent and is not entitled to a psychiatric evaluation or hearing simply because he has a history of mental illness. (Id. at 337). Justice Stolz further observed that de Luna had raised the issue of his competence at his sentencing, but that he had determined at that time that de Luna was "fully competent." (Id. at 338). Among the factors that the Justice cited in support of this conclusion were de Luna's active

10

participation in his guilty plea allocation, during which he "gave coherent responses, confirmed he understood the proceedings, and waived his rights," as well as the Justice's own observations of de Luna over the course of "four days of hearing[s], jury selection, and trial," during which "it was clear that [de Luna] understood the proceedings and was able to assist in his [own] defense." (Id. ).  Justice Stolz also noted that neither de Luna's three attorneys, nor the prosecutor, nor the four or more judges who had overseen de Luna's pretrial proceedings ever requested a competency hearing.  (Id.).  For these reasons, Justice Stolz declared that he was "satisfied then, and . . . satisfied now, that there was no proper basis for questioning [de Luna's] sanity," and that he was "fully competent to enter into a plea and to be sentenced."  (Id. at 339).

Not surprisingly, after he had rejected de Luna's competency claim, Justice Stolz also gave short shrift to the contention that Mr. Sharpe had been ineffective for failing to request a competency hearing.  As he explained, "[t]here can be no deprivation of effective assistance of counsel arising from . . . [the] failure to make a motion that had little or no chance of success."  (Id.).

De Luna's Section 440.10 ineffectiveness motion also incorporated by reference his pro se pretrial motion for reassignment of counsel.  (See id. at 257-62).  Using a preprinted form to file the earlier motion, de Luna had circled every conceivable potential defalcation by counsel, thereby indicating that Mr. Sharpe had failed to "visit [him] at [his] place of confinement; provide [him] with in-court conference[s]; listen to [his] version of events; keep [him] informed of motion status; provide [him] with copies

of all [his] legal documents; discuss with [him] possible defense strategies; return [his] telephone calls or respond to [his] correspondence; investigate [his] witnesses; [and] submit additional motions on [his] behalf."  (Id. at 265-67) (capitalization and numbering omitted).  Indeed, the only non-boilerplate allegation in de Luna's Section 440.10 motion was his conclusory assertion that Mr. Sharpe had "done nothing . . . credible" insofar as de Luna's "case [was] concerned."  (Id. at 267).  Justice Stolz disagreed, stating that Mr. Sharpe had, "on the whole, . . . provided meaningful representation."  (Id. at 339).

On April 15, 2013, de Luna sought leave to appeal the denial of his Section 440.10 motion to the Appellate Division.  (Id. at 340-48).  Justice Karla Moskowitz denied that application on May 21, 2013.  (Id. at 353).

F.     Habeas Petition

De Luna filed his pro se Petition on April 21, 2014.  (ECF No. 1). The Attorney General filed opposition papers on August 18, 2014.  (ECF Nos. 9, 10).  De Luna then filed his Reply on September 10, 2014.  (ECF No. 13).  The Petition consequently is fully submitted.

II.     Discussion

A.     Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  The petitioner bears the burden of proving, by a preponderance of the

evidence, that his rights have been violated.  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.

1997).

> Section 2254, as amended by AEDPA, provides, in part, that:
>
>> An application for a writ of habeas corpus on behalf of
>> a person in custody pursuant to the judgment of a State
>> court shall not be granted with respect to any claim that
>> was adjudicated on the merits in State court
>> proceedings unless the adjudication of the claim –
>>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the Supreme
>> Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, the Supreme Court has

"construed the amended statute so as to give independent meaning to 'contrary [to]' and

'unreasonable.'"  229 F.3d 112, 119 (2d Cir. 2000).  "Under the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the] Court has on a set of materially indistinguishable facts."

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application"

clause, a federal habeas court should "ask whether the state court's application of clearly

established federal law was objectively unreasonable."  Id. at 409.  This standard does not

require that reasonable jurists would all agree that the state court was wrong.  Id. at 409-

10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  To the extent that a habeas petition challenges factual findings, however, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  <u>Id.</u> § 2254(e)(1).

Section 2254 thus embodies a "'difficult to meet' . . . and 'highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt.'"  Cullen v. Pinholster, 563 U.S. 170, ___, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington v. Richter, 562 U.S.86, 102 (2011); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)).  Despite this standard, however, if "a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  <u>Williams</u>, 529 U.S. at 389.

B.    De Luna's Claims

1.    Competency

De Luna first contends that he was suffering from a mental disease or defect at the time of his plea, rendering him legally incompetent to enter a guilty plea, and that the trial court should have ordered a mental examination or competency hearing pursuant to Section 730 of the CPL ("Section 730").  (See Pet. ¶ 12 (Ground One); Reply at 3-7).

a.    Relevant Law

The Supreme Court has "repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process." Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (internal quotation marks omitted).  "Indeed, the right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination." Id. at 354 n.4.  However, "before being required to hold a competency hearing on its own initiative, the trial judge must be made aware of the factual basis for questioning the competence of the defendant." Nicks v. United States, 955 F.2d 161, 168 (2d Cir. 1992); accord United States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995) ("[A] hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent."); see also People Armlin, 37 N.Y.2d 167, 171 (1975) ("[A] defendant is not entitled, as a matter of right, to have the question of his capacity to stand trial passed upon before the commencement of the trial, if the court is satisfied from the

available information that there is no proper basis for questioning the defendant's sanity.").

Moreover, when reviewing a state trial judge's decision not to order a competency hearing, a habeas court must presume that the state judge's findings of fact are correct in the absence of clear and convincing evidence to the contrary. Harris v. Kuhlmann, 346 F.3d 330, 350 (2d Cir. 2003). This rule applies equally when a defendant pleads guilty rather than going to trial. See id. at 349 ("The constitutional right to due process is violated when a person who is incompetent is convicted of a crime, whether the conviction follows a trial or a plea of guilty."); see also Godinez v. Moran, 509 U.S. 389, 398-99 (1993) ("[W]hile the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial. . . . This being so, we can conceive of no basis for demanding a higher level of competence for those defendants who choose to plead guilty.").

b.    Application of Law to Facts

The slender reed upon which de Luna rests his competency claim consists of three aftercare letters from the Correctional Health Services Division of the New York City Health and Hospitals Corporation. (Pet. at 37-39). Only one aftercare letter was furnished to Justice Stolz during de Luna's sentencing, but de Luna has attached three such letters to his Petition. (Compare id. with R. 124). All three letters predate his trial

16

by at least six months; indeed, two of the letters are dated more than fourteen months

before trial.  (Pet. at 37-39).

      During colloquy with Justice Stolz, Mr. Sharpe noted that the letter that de

Luna had given him – and that he in turn furnished to the court – referred to alcohol

dependence.  It therefore is clear that this letter is one dated November 2, 2008

("November 2 Letter"), which contains "Axis I" diagnoses of chronic paranoid

schizophrenia and "ETOH coc. Dependence."[4]  (Pet. at 37).  The November 2 Letter also

notes that de Luna had been prescribed Risperdal and Remeron for these conditions.

(Id.).  As de Luna correctly observed in his Section 440.10 motion, Risperdal is an

antipsychotic medication, and Remeron is used to treat depression.   (See R. 253);

Physicians' Desk Reference 1580, 2290-91 (55th ed. 2001).  The only other condition

referenced in any of the letters is "Anxiety/Psychosis."  (Pet. at 38).

      Even if the Court were to assume that Justice Stolz should have been aware

of the contents of all three aftercare letters, they simply do not show that he erred in

finding that de Luna was competent both when he pleaded guilty and on the date of his

sentencing, or that de Luna was denied his due process rights.  Indeed, in Sell v. United

---

    [4]    In his Petition, de Luna complains that Mr. Sharpe's representation that the
November 2 Letter referenced alcohol dependence was incorrect since none of the aftercare
letters "say anything about a history of alcoholism." (Pet. at 19).  ETOH, however, is a
physician's shorthand reference to ethanol, i.e., alcohol.  See, e.g., Shea v. Royal Enterprises,
Inc., No. 09 CIV 8709 (THK), 2011 WL 2436709, at *1 (S.D.N.Y.  June 16, 2011).  The
November 2 Letter therefore plainly refers to de Luna's alcohol dependence.  Although that
letter suggests that de Luna also used cocaine, there is no reason to believe that de Luna's
fondness for either alcohol or cocaine would have affected his mental state on the date of his
guilty plea, which took place more than eighteen months after his arrest.

States, 539 U.S. 166, 179-80 (2003), the Supreme Court held that it is lawful to compel a defendant to take antipsychotic medications to render him competent to stand trial.  Here, at best, de Luna has shown that he was taking psychotropic medications voluntarily to deal with his mental health issues.  This scarcely suggests that those conditions were not being adequately addressed and, therefore, constituted an impediment to de Luna's participation in the legal proceedings in which he was involved, or that Justice Stolz should have been concerned that this was a possibility.

Moreover, the evidence of de Luna's competency was overwhelming.  As Justice Stolz noted, he had observed de Luna over a considerable period of time, during which "it was clear that [de Luna] understood the proceedings and was able to assist in his defense."  (R. 338).  Additionally, none of the attorneys involved in his case – including a prosecutor and three defense counsel – had ever requested a competency hearing or suggested that de Luna was mentally impaired.  In fact, when Justice Stolz expressly asked about de Luna's competence on the date of de Luna's sentencing, both Mr. Sharpe and the prosecutor confirmed that they had no concerns in that regard.  (Id. at 125).  De Luna's entirely rational decision to plead guilty after the jury heard the highly emotional testimony of the victim, rather than risk a higher sentence after a trial, is further evidence that he was acting rationally on the date of his plea.[5]

---

[5]      As de Luna's appellate counsel acknowledged, if de Luna had been convicted of Attempted Murder in the Second Degree after a trial, he faced a potential determinate sentence of anywhere from five to twenty-five years in jail.  See N.Y. Penal Law §§ 70.02(3)(a), 110.05(3), 125.25; (R. 165 ("The sentence range for a non-predicate offender convicted of a class B felony is 5 to 25 years' imprisonment.")).

In any event, even if de Luna's competence were a matter that could fairly be debated, Justice Stolz made an express finding that de Luna was competent. This factual determination is entitled to a presumption of correctness which can only be overcome by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). A showing that de Luna suffered from psychosis before his trial began, and perhaps was still being medicated at that time, does not even come close to the requisite threshold. See, e.g., Jones v. Walsh, No. 06 Civ. 225 (JGK), 2007 WL 4563443, at *6 (S.D.N.Y. Dec. 27, 2007) (deferring to state court determination that nothing in the defendant's materials demonstrated that he was incompetent at the time of his plea, even though he was under psychiatric care following his arrest and was taking psychotropic medication); Castrillo v. Breslin, No. 01 Civ. 11284 (GBD) (GWG), 2005 WL 2792399, at *10 (S.D.N.Y. Oct. 26, 2005) (records did not appear to cast doubt on competence since they did not relate to treatment being received during or immediately prior to trial); Lopez v. Walker, 239 F. Supp. 2d 368, 374-75 (S.D.N.Y. 2003) (references in presentence report to prior suicide attempts, hospitalization, and use of psychotropic medication did not obligate the court to investigate competence further where defendant appeared to be coherent and rational and defense counsel did not express any concern about his competence). Accordingly, de Luna is not entitled to the issuance of a writ on the theory that he was mentally incompetent during the course of his guilty plea and subsequent sentencing.

Nor was de Luna entitled to a competency hearing. In Pate v. Robinson, 383 U.S. 375, 384 (1966), the Supreme Court held that a habeas petitioner cannot waive

his right to a competency hearing if he lacks the capacity to do so knowingly and

intelligently.  As a consequence, unless the trial court takes steps to ensure that this does

not occur, its failure to do so may deprive a defendant of a fair trial.  Id. at 385.  In that

regard, CPL § 730.10(1) defines an incapacitated person as someone who "as a result of

mental disease or defect lacks capacity to understand the proceedings against him or to

assist in his own defense.[6]  CPL § 730.30(1), in turn, requires that a trial court "issue an

order of examination when it is of the opinion that the defendant may be an incapacitated

person."  Additionally, regardless of the results of such an examination, a state trial court

must order a competency hearing if the defendant or the district attorney requests one, or

the court makes a sua sponte determination that there is "reasonable ground" to believe

that the defendant may be incompetent to stand trial.  CPL § 730.30(2)-(4); People v.

Smyth, 3 N.Y.2d 184, 187 (1957) ("If at any time before final judgment in a criminal

action it shall appear to the court that there is reasonable ground for believing that a

defendant is in such state of idiocy, imbecility or insanity that he is incapable of

understanding the charge, indictment or proceedings or of making his defense, it is the

duty of the court to direct him to be examined in these respects."); see also Silverstein v.

Henderson, 706 F.2d 361, 369 (2d Cir. 1983) ("[T]rial court must order a hearing when

there is 'reasonable ground' for believing that the defendant may be incompetent to stand

---

[6]     The inquiry is substantially the same under federal law, asking "whether [the
defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of
rational understanding – and whether he has a rational as well as factual understanding of the
proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960).

trial.") (quoting United States ex rel. Roth v. Zelker, 455 F.2d 1105, 1108 (2d Cir. 1972)).

As the Second Circuit determined in Silverstein, these state procedural protections are

fully consistent with the requirements established in Pate. See Silverstein, 706 F.2d at

367.

Here, notwithstanding the aftercare letters, de Luna has failed to adduce any

psychiatric evidence that he was incompetent to stand trial or plead guilty.  Moreover,

neither his trial counsel, nor the prosecutor, nor the trial judge ever expressed any doubt

concerning his mental competence.  Indeed, they all expressed the belief that he was fully

competent.  In these circumstances, there was no reason for Justice Stolz to direct

pursuant to CPL § 730.30 that de Luna be examined or that a competency hearing be

held.  The trial court's failure to do so consequently cannot have given rise to a denial of

due process under either state or federal law.

In sum, de Luna is not entitled to the issuance of a habeas writ based upon

his alleged mental incompetence.

### 2.      Ineffective Assistance of Counsel

De Luna's only other claim is that his conviction should be set aside

because his trial counsel, Mr. Sharpe, provided ineffective assistance.  Many of de Luna's

complaints relate to the period preceding his guilty plea, during which Mr. Sharpe

allegedly failed to (a) visit de Luna where he was confined, (b) obtain an in-court

conference for de Luna, (c) listen to de Luna's version of events, (d) inform de Luna of

the status of defense and prosecution motions, (e) provide de Luna with copies of all legal

documents, (f) discuss possible defense strategies with de Luna, (g) return de Luna's phone calls or correspondence, (h) investigate witnesses, or (i) submit additional motions on de Luna's behalf.  (See Pet. ¶ 12 (Ground Two); Reply at 3).  De Luna, of course, also contends that Mr. Sharpe provided ineffective assistance by failing to investigate his psychiatric history and present the results of that investigation accurately to the trial court at the outset of his sentencing.  (See Pet. ¶ 12 (Ground Two); Reply at 8-14).

        a.      Relevant Law

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that (a) his counsel's performance "fell below an objective standard of reasonableness" and (b) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688-94.  With respect to the first of these requirements, there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at 689.  This deference is due because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002).  Therefore, a petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted).

Although the Strickland test has two prongs, a court considering an ineffective assistance claim need not "address both components of the [Strickland]

inquiry if the [petitioner] makes an insufficient showing on one." Strickland, 466 U.S. at 697.  Indeed, as the Supreme Court noted in Strickland, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

Here, of course, de Luna advances his ineffectiveness claim through a Section 2254 proceeding.  As the Supreme Court recently has reaffirmed, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel," the court is required to "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013) (quoting Cullen, 131 S. Ct. at 1403).  For this reason, it is scarcely surprising that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail.  See Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

> b.   Application of Law to Facts

De Luna's numerous complaints about Mr. Sharpe's performance prior to the entry of de Luna's guilty plea fail for two reasons.  First, they consist entirely of conclusory statements wholly unsupported by any facts.  Second, even if de Luna had adduced detailed evidence regarding Mr. Sharpe's alleged shortcomings, these assignments of error were waived by virtue of his guilty plea, so long as it was entered knowingly and voluntarily.

As the Supreme Court explained in <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973), "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." Consequently,

> [w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

<u>Id.</u> Here, as noted above, de Luna has failed to adduce clear and convincing evidence that he lacked the mental capacity to enter his guilty plea. The Court therefore must presume – as Justice Stolz found – that de Luna was in fact competent to enter his plea and to be sentenced. It follows that even if Mr. Sharpe's pretrial efforts on de Luna's behalf fell below an objective standard of reasonableness, de Luna has waived that claim.

Furthermore, because de Luna has failed to show that he was incompetent when he entered his guilty plea or subsequently when he was sentenced, there is no basis upon which this Court could conclude that Mr. Sharpe's failure to press de Luna's incompetency claim more vigorously during the sentencing proceeding was objectively unreasonable. Indeed, it is counsel's duty not to advance a claim that he believes cannot be supported by the facts. <u>See</u> Rule 3.1(a), N.Y. Comp. Codes R. & Regs. tit. 22, § 1200 (2013) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not

frivolous."). Compliance with this ethical precept obviously cannot give rise to a Sixth Amendment violation.

Finally, even if there were some basis to believe that Mr. Sharpe should have requested that de Luna be examined pursuant to CPL § 730.30, there has been no showing that the outcome of that process would have led any psychiatrist to conclude that de Luna lacked the capacity to enter his guilty plea. For that reason, de Luna also has failed to show that he was prejudiced by Mr. Sharpe's failure to request that he be examined or that the court hold a competency hearing.

III.   Conclusion

For the foregoing reasons, de Luna's Petition should be denied. Furthermore, because de Luna has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

IV.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Katherine Polk Failla, to my chambers at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b).  Any requests for an extension of time for filing objections must be directed to

Judge Failla.  The failure to file timely objections will result in a waiver of those

objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

SO ORDERED.

Dated:       New York, New York
             November 6, 2015

_____
        FRANK MAAS
United States Magistrate Judge

Copies to:

Alberto de Luna (via U.S. Mail)
10-A-1065
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Respondent's Counsel (via ECF)